UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DENISE BEVROTTE, on behalf of her son,** | * | |
| **MACEO BEVROTTE, JR., deceased, and on** | * | **COMPLAINT--CLASS ACTION** |
| **behalf of all others similarly situated** | * | |
| | * | **NUMBER** |
| **Plaintiffs** | * | |
| | * | **SECTION** |
| **VERSUS** | * | |
| | * | **MAG** |
| **CAESARS ENTERTAINMENT** | * | |
| **CORPORATION, a Delaware corporation** | * | **DEMAND FOR JURY TRIAL** |
| **d/b/a HARRAH'S NEW ORLEANS** | * | |
| **HOTEL AND CASINO** | * | |
| | * | |
| **Defendant** | * | |

******************************************

## CLASS ACTION COMPLAINT

Plaintiff, DENISE BEVROTTE, on behalf of her son, MACEO BEVROTTE, JR., deceased, brings this CLASS ACTION COMPLAINT against defendant CAESA'S ENTERTAINMENT CORPORATION D/B/A HARRAH'S NEW ORLEANS HOTEL AND CASINO (hereinafter referred to collectively as "HARRAH'S").  Plaintiff alleges as follows upon personal knowledge as to herself and knowledge of her son, h is acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorney.

### NATURE OF ACTION

1.

Second-hand smoke is smoke from cigarettes or cigars that is exhaled or otherwise released into the atmosphere.  It is composed of sidestream smoke (smoke released from the burning end of a cigarette) and exhaled mainstream smoke (the smoke

1

exhaled by the smoker).[1] Non-Smokers who are exposed to second-hand smoke inhale the same chemicals that smokers inhale.[2] Second-hand smoke has been designated as a known human carcinogen (cancer-causing agent) by the U.S. Environmental Protection Agency, the National Toxicology Program, and the International Agency for Research on Cancer, as well as an occupational carcinogen by the National Institute for Occupational Safety and Health.[3]

2.

Second-hand smoke levels at HARRAH'S during the years of Maceo Bevrotte, Jr's employment, on information and belief, existed throughout the gaming area at levels high enough to have invaded his bloodstream and those of every employee who worked in the gaming areas. During the years of Maceo Bevrotte,Jr.'s employment, especially in the earlier years, no sufficient ventilation systems were in use at HARRAH'S, and no health and safety measures were taken to reduce the risk of second-hand smoke to employees.  Similarly, no efforts were taken by HARRAH'S to create health and safety committees for employees, or to ban smoking on casino floors.

3.

Recognizing the dangers of second-hand smoke too late for Mr. Bevrotte and other employees, HARRAH"S has in recent years, voluntarily taken measures to minimize the second-hand smoke on their gaming floors, admitting to the danger that second-hand smoke posed to the health and safety of its employees before this limited

---

[1] *See* Office of the Surgeon General, *available at URL* http://www.surgepngeneral.gov/library/seconhandsmoke/factsheets/factsheet1.html. (last visited March 7, 2011).
[2] *Id.*
[3] *Id.*

curative action was taken, including making at least some if its poker rooms smoke-free; and designating a few non-smoking tables.

4.

Despite overwhelming scientific studies, HARRAH'S has failed to protect the health and welfare of many of its employees who performed and must perform their jobs while breathing in second-hand cigarette and cigar smoke. Employers have a duty to provide their employees with a safe workplace. HARRAH'S has failed and is failing their employees, and breaching its duty to them, by not taking reasonable steps to minimize exposure to second-hand smoke. Plaintiff brings this action to ensure the health and welfare of all casino employees at HARRAH'S, whose smoking policies are driven by a desire to maximize profits at the expense of its employees' health and safety.

## EFFECTS OF SECOND-HAND SMOKE

5.

The dangers of second-hand smoke have been acknowledged at least since 1972.[4] In a 2006 study, the Surgeon General found that "today, massive and conclusive scientific evidence documents adverse effects of involuntary smoking on children and adults, including cancer and cardiovascular diseases in adults, and adverse respiratory effects in both children and adults."[5]

6.

Second-hand smoke contains more than fifty cancer-causing chemicals.[6] Non-smokers inhale these same chemicals when they are exposed to second-hand smoke.

---

[4] Department of Health and Human Services, The Health Consequences of Involuntary Exposure to Tobacco Smoke, A Report of the Surgeon General, iii (2006).
[5] *Id.*
[6] *Id.*

The Surgeon General estimated that in 2005, exposure to second-hand smoke killed over 49,000 non-smokers.[7]

7.

The Surgeon General has found that exposure to second-hand smoke has immediate adverse effects on the cardiovascular system of non-smokers, causes injury to the respiratory tract of non-smokers and may cause other forms of cancer in non-smokers, including adult leukemia.[8]

8.

A causal relationship also exists between exposure to second-hand smoke and odor annoyance and nasal irritation.[9]

9.

A causal relationship also exists between second-hand smoke exposure and acute respiratory symptoms such as coughing, wheezing, chest tightness and difficulty breathing among healthy adults.[10]

**PARTIES**

10.

Plaintiff DENISE BEVROTTE, the mother of MACEO BEVROTTE, on whose behalf this suit is brought, is a resident of Orleans Parish, Louisiana. At the time of his death, her son, Maceo Bevrotte, was a resident of Orleans Parish, Louisiana.

11.

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

Defendant CAESARS ENTERTAINMENT CORPORATION is and was at all times relevant to this action, upon belief, a corporation incorporated under the laws of the state of Delaware, with its principal place of business in the state of Nevada. CAESARS ENTERTAINMENT CORPORATION does business in Orleans Parish, Louisiana as HARRAH'S NEW ORLEANS HOTEL AND CASINO.

## JURISDICTION AND VENUE

12.

This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least on member of the putative class is a citizen of a state different from the Defendant, (b) the amount in controversy exceeds $75,000 exclusive of costs and interests, and (c) none of the exceptions under that subsection apply to the instant action.

13.

Venue is proper before this Court under 28 U.S.C. § 1391(b) and 28 U.S.C. §1391(c).

## GENERAL ALLEGATIONS

14.

The gaming area at HARRAH'S consists of table games (blackjack, craps and roulette), as well as slot machines and other gaming devices.

15.

Numerous employees work in the gaming area at HARRAH'S, including casino dealers, pit supervisors, cocktail servers, security officers and managers.

16.

The gaming area is open for business to the public twenty-four hours a day, seven days a week.

17.

Smoking is permitted in the gaming area at HARRAH'S twenty-four hours a day, seven days a week.

18.

Employees who work in the gaming area usually work eight hour shifts.

19.

While working, employees in the gaming area are continually exposed to second-hand smoke.

20.

The management at HARRAH'S forbids employees in the gaming area from choosing to work only those tables designated as "smoke-free" tables.

21.

Employees are also forbidden by HARRAH'S to request that any customer refrain from smoking, blow smoke away from the table, or ask that customers who are smoking move their ashtrays from the tables.

22.

Further, HARRAH'S encourages its customers to smoke. Employees walk into gaming floors selling cigars and cigarettes. HARRAH'S provides cigarettes at no cost to gamblers who play the most or who continue to play at their casino.

23.

Employees at HARRAH'S are forbidden from complaining about the amount of second-hand smoke that they are forced to inhale at the risk of losing their jobs if they dissent.

24.

Exposure to second-hand smoke on the casino floor at causes numerous deleterious health effects, including:

a. cancer

b. red, irritated watery eyes;

c. coughing and sore throat;

d. shortness of breath;

e. dizziness;

f. wheezing, tightness in chest or bronchitis

g. headache; and

h. nausea

25.

Defendant HARRAH'S is aware of the health risks posed by exposure to second-hand smoke.

26.

Employees in the gaming area at HARRAH'S have no choice but to inhale second-hand smoke for the entirety of their employment.

27.

Despite having knowledge that second-hand smoke is damaging the health of its employees, HARRAH'S has failed to adequately address the problem of second-hand smoke in the gaming area of its casino. Specifically, HARRAH'S has failed to:

a. designate certain sections of the gaming area as smoke free;

b. restrict the times when smoking is permitted in the gaming area;

c. physically separate certain parts of the gaming area and designate them as smoke-free;

d. install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

e. monitor the health and welfare of its employees who are exposed to second-hand smoke and take steps to assist those adversely affected by second-hand smoke; and

f. take any and all other necessary steps to mitigate the dangers posed by second-hand smoke.

## ALLEGATIONS AS TO NAMED PLAINTIFF

28.

Plaintiff MACEO BEVROTTE, JR. worked at HARRAH'S as a dealer for approximately fifteen years.

29.

Mr. Bevrotte performed his job duties in the gaming area at HARRAH'S.

30.

While working at HARRAH'S, Mr. Bevrotte was continuously exposed to second-hand smoke.

31.

Mr. Bevrotte is a non-smoker.

32.

As a direct and proximate result of exposure to second-hand smoke, Mr. Bevrotte suffered negative health effects, including:

    a. contracting cancer through ingestion of cancer-causing chemicals and toxins;

    b. coughing and sore throat;

    c. shortness of breath;

    d. dizziness;

    e. wheezing or tightness in the chest; and

    f. headache

33.

On March 9, 2010, Mr. Bevrotte died a premature death of cancer, preceded by severe pain and suffering.

34.

Mr. Bevrotte's cancer is directly linked to the long-term, second-hand smoke exposure that he suffered as an employee of HARRAH'S.

**CLASS CERTIFICATION ALLEGATIONS**

35.

Plaintiff seeks certification of a class (the "Class") under Rule 23(b)(3), defined as follows: "All former, current, and future nonsmoking employees of CAESARS ENTERTAINMENT CORPORATION d/b/a HARRAH'S NEW ORLEANS HOTEL

AND CASINO who were, are or in the future will be exposed to unsafe levels of second-hand smoke." Excluded from the class is 1)Any Judge or Magistrate presiding over this action and members of their families; 2)Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former officers and directors; 3)persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

36.

On information and belief, there are over one thousand members of the Class. As such, individual joinder is impracticable.

37.

Common questions of fact and law exits as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a) Whether Defendant has a duty to provide a safe workplace

(b) Whether, as part of its duty under LSAR.S. 23:13 to provide a safe workplace, Defendant had to mitigate the dangers posed by second-hand smoke;

(c) Whether Defendant took adequate steps to curtail the danger of second-hand smoke; and

(d) Whether the Plaintiff and the Class are entitled to relief, and the nature of such relief.

38.

Plaintiff's claims are typical of other members of the Class. Their claims arise out of the wrongful conduct of the Defendant and are based upon the same transactions made uniformly to Plaintiff and his Class.

39.

Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class.

40.

These policies of the Defendant challenged herein apply to and affect members of the Class uniformly.

## COUNT I

## FAILURE TO PROVIDE A SAFE WORKPLACE

**(By Plaintiff individually and on behalf of the class)**

41.

Plaintiff realleges and incorporates the foregoing allegations as though set forth fully herein.

42.

The Defendant has a statutory duty, pursuant to Louisiana Revised Statutes (LSA-R.S. 23:13 and LSA-R.S. 23:15) to maintain a workplace that is in a reasonably safe condition for its employees.

43.

LSA-R.S. 23:13 and LSA-R.S. 23:15 states in relevant part:

Every employer shall

      i. Furnish employment and a place of employment which will be reasonably safe for the employee therein;

      ii. Furnish and use safety devices and safeguards, and adopt and use such methods and processes as are reasonable adequate to render such employment safe;

      iii. Do every other thing reasonably necessary to protect the lives, safety and health and welfare of employees; and

      iv. Post conspicuously in the working place all posters and information informing employees of their rights and obligations.

45.

The Defendant has breached this duty by failing to take reasonable precautions to protect its employees from exposure to second-hand smoke.

46.

Specifically, the Defendant has breached this duty in the following ways:

    a. failing to designate certain sections of the gaming area as smoke-free;

    b. failing to restrict the times in which smoking is permitted in the gaming area;

    c. failing to physically separate certain parts of the gaming area and designate them as smoke-free;

    d.  failing to install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

    e.  failing to monitor the health and welfare of its employees who are exposed to second-hand smoke, and failing to take steps to assist those adversely affected by second-hand smoke; and

    f.  failing to take any other necessary steps to mitigate the dangers posed by second-hand smoke.

47.

As an actual and proximate result of Defendant's breach, Plaintiff and other members of the Class have suffered and continue to suffer damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

    g.  Enter an Order awarding Plaintiff and the Class costs and reasonable attorney's fees associated with the prosecution of this action;

    h.  Award any and all further relief provided by law that this Court deems equitable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully Submitted,

/s/ Jalila Jefferson-Bullock

                                              Jalila Jefferson-Bullock (28623)
                                              Jefferson & Jefferson, PLLC
                                              P.O. Box 15094
                                              New Orleans, LA 70175-5094
                                              504-457-2798/504-457-2797 (fax)

**PLEASE ISSUE SUMMONS TO:**

**CAESARS ENTERTAINMENT CORPORATION**
**Through its registered agent:**
**Corporation Service Company**
**320 Somerulos Street**
**Baton Rouge, LA 70802-6129**

**CAESARS ENTERTAINMENT CORPORATION**
**Through the Louisiana Secretary of State**
**8585 Archives Avenue**
**Baton Rouge, LA 70809**