UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DENISE BEVROTTE, on behalf of          CIVIL ACTION
her son MACEO BEVROTTE, JR.,
deceased, and on behalf of
all others similarly situated


VERSUS                                 NO: 11-543


CAESARS ENTERTAINMENT                  SECTION: R
CORPORATION d/b/a HARRAH'S
NEW ORLEANS HOTEL AND CASINO


### ORDER AND REASONS

Before the Court is defendant Caesars Entertainment Corporation's ("Caesars") motion to dismiss or strike class allegations. Because the Court finds that plaintiff Denise Bevrotte cannot meet the standard set by Federal Rule of Civil Procedure 23 to maintain this action on behalf of the proposed class, the Court grants Caesars's motion to strike class allegations.


### I.   BACKGROUND

Plaintiff Denise Bevrotte brings this action on behalf of her deceased son, Maceo Bevrotte, Jr. She contends that her son, a non-smoker, was "continuously exposed to second-hand smoke" during his fifteen years of employment as a poker dealer at

Harrah's Casino.[1] Ms. Bevrotte alleges that as a result of this exposure, her son suffered deleterious health effects, including: "contracting cancer through ingestion of cancer-causing chemicals and toxins; coughing and sore throat; shortness of breath; dizziness; wheezing or tightness in the chest; and headache."[2]

Ms. Bevrotte attempts to bring this action on behalf of a class, which she defines in her complaint as:

> All former, current, and future nonsmoking employees of CAESARS ENTERTAINMENT CORPORATION d/b/a HARRAH'S NEW ORLEANS HOTEL AND CASINO who were, are or in the future will be exposed to unsafe levels of second-hand smoke.[3]

She seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(3).[4]

Caesars now asks the Court to dismiss plaintiff's class allegations under Federal Rule of Civil Procedure 12, or in the alternative, to strike plaintiff's allegations under Rule 23.[5]

---

[1]   R. Doc. 1 at 9.

[2]   *Id.*

[3]   *Id.* at 9-10. Plaintiff excludes from the class: "(1) Any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons." *Id.* at 10.

[4]   *Id.* at 9.

[5]   R. Doc. 6.

Caesars contends that Ms. Bevrotte cannot meet Rule 23's requirements to maintain the class. Bevrotte has not opposed the motion.

## II.  STANDARD

The Court has authority to strike class allegations on the face of the complaint when "a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." *See Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, at *2 (E.D. La. 2007); Fed. R. Civ. P. 23(d)(1)(D) ("[T]he court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]"); *cf. John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. To be certified, the class must first satisfy the threshold requirements of Rule 23(a): (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality ("named parties' claims or defenses are typical

3

... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interest of the class"). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Fed. R. Civ. P. 23(a).

Additionally, the class must satisfy one of the three subsections of Rule 23(b). *See Amchem Prods.*, 521 U.S. at 614. Plaintiff seeks certification under Rule 23(b)(3),[6] which imposes two prerequisites: predominance and superiority. The Court must find both that "questions of law or fact common to class members predominate over any questions affecting only individual members" (the predominance requirement), and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the superiority requirement). Fed. R. Civ. P. 23(b)(3). *See also Amchem Prods.*, 521 U.S. at 615; *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

## III. DISCUSSION

Certification in this case requires that the class satisfy the threshold requirements of Rule 23(a), and then Rule 23(b)(3)'s predominance and superiority requirements. This Court will take up the Rule 23(b)(3) prerequisites first. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (declining to address Rule 23(a) requirements when plaintiffs

---

[6]    R. Doc. 1 at 9.

4

failed to satisfy those set by 23(b)); *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4691685, at *8 (E.D. La. 2008) (same).

Plaintiff proposes the following class definition:

> All former, current, and future nonsmoking employees of CAESARS ENTERTAINMENT CORPORATION d/b/a HARRAH'S NEW ORLEANS HOTEL AND CASINO who were, are or in the future will be exposed to unsafe levels of second-hand smoke.[7]

In her complaint, she argues that common questions of law and fact exist as to all members of the putative class, that such questions predominate over those affecting individual class members only, and that a class format is therefore the superior method of adjudication in this case. In support of her position, she proposes the following common questions:

> (a) Whether Defendant has a duty to provide a safe workplace;
> (b) Whether, as part of its duty ... to provide a safe workplace, Defendant had to mitigate the dangers posed by second-hand smoke;
> (c) Whether Defendant took adequate steps to curtail the danger of second-hand smoke; and
> (d) Whether the Plaintiff and the Class are entitled to relief, and the nature of such relief.[8]

Yet plaintiff's pleadings fall short of the mark set by Rule 23.

Plaintiff's claim sounds in negligence. She alleges that defendant breached its statutory duty under La. R.S. 23:13 to

---

[7]     R. Doc. 1 at 9-10.

[8]     R. Doc. 1 at 10.

5

provide a safe place to work, as a proximate result of which plaintiff and the other class members suffered damages. *See* La. R.S. 23:13 ("Every employer shall furnish employment which shall be reasonably safe for the employees therein."). Louisiana courts employ a duty/risk analysis in adjudicating negligence claims, requiring a plaintiff to prove each of five separate elements: (1) that the defendant had a duty to conform his conduct to a specific standard; (2) that the defendant's conduct failed to conform to the appropriate standard; (3) that defendant's conduct was a cause-in-fact of the plaintiff's injures; (4) that the risk of harm to plaintiff was within the scope of protection that the duty afforded; and (5) that the plaintiff was in fact damaged. *Rando v. ANCO Insulations Inc.,* 16 So. 3d 1065, 1086 (La. 2009); *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006). *See also Guidry v. Coregis Ins. Co.*, 896 So. 2d 164, 178 (La. App. 3d Cir. 2004) (using the statutory duty set by Louisiana's Workers' Compensation Law, La. R.S. 23:13, in the court's duty/risk analysis to determine whether the employer was negligent).

**Predominance**

To predominate, "common issues must constitute a significant part of the individual cases." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th. Cir. 1999). Predominance is judged

by considering "the cause of action *as a whole*," rather than any individual element in isolation. *Steering Comm.*, 461 F.3d at 601 (emphasis added). Thus, the predominance requirement, "although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Unger*, 401 F.3d at 320 (quoting *Amchem Prods.*, 521 U.S. at 623-24).

Determination of whether class certification is appropriate requires the Court to identify the substantive issues that will control the outcome of the case, assess which issues will predominate, and then determine whether the issues are common to the class. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003); *Nguyen*, 2008 WL 4691685, at *3. The Court is to look beyond the pleadings to "understand the claims, defenses, relevant facts and applicable substantive law." *O'Sullivan*, 319 F.3d at 738 (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). *See also* In re *Ford Motor Co.*, 182 F.R.D. at 219 ("The issues of predominance and superiority cannot be analyzed in a vacuum.").

Notably, the "common questions" that plaintiff offers concern only the first two elements of negligence – duty and breach. It is true that Louisiana's Workers' Compensation Law itself imposes a duty standard that is common to the class in

7

that it requires employers to provide a "reasonably safe" workplace. But the question of whether defendant breached that duty involves conduct that changed over a period of time. Plaintiffs allege that in recent years Harrah's took some measures to minimize smoke on the gaming floors.[9] As plaintiff's class definition has no temporal limitation, proof of a breach of duty will require plaintiffs to challenge different species of conduct, depending on when the class members worked for Harrah's. Furthermore, plaintiffs do not even address the issues of causation and damages. By their very nature, these claims raise individualized and fact-intensive issues of causation and damages that cannot be adjudicated in a class action format.

In *Steering Committee*, the Fifth Circuit affirmed the district court's finding that the 23(b)(3) predominance requirement was not met, despite the alleged injuries all having resulted from smoke exposure following a fire at a chemical plant. Because the district court had concluded that "individual issues surrounding exposure, dose, health effects, and damages will dominate at the trial," the Fifth Circuit agreed that common issues did not predominate, and that a class would likely devolve into "a series of individual mini-trials which the predominance

---

[9]    R. Doc. 1 at 2-3.

requirement is intended to prevent." 461 F.3d at 602.[10] The court
continued:

> [A]lthough the alleged cause of the injuries is also a single
> accident - a refinery fire - the causal mechanism for
> plaintiff's injuries - alleged exposure or fear of exposure
> to toxic substances - is not so straightforward. While it is
> certainly true that the cause of the fire itself is an issue
> common to the class, each individual plaintiff must meet his
> or her own burden of medical causation, which in turn will
> depend on any number of the factors enumerated by the experts
> who testified at the class certification hearing.

*Id.*

In this case, as in *Steering Committee*, such minitrials to
determine causation are all but inevitable. Plaintiff claims that
the exposure caused her son's cancer,[11] coughing and sore throat,

---

[10]    Among the only Fifth Circuit cases supporting class
certification despite difficult questions of causation is *Mullen
v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999).
There, the court distinguished contrary precedent by noting that
"the putative class members are all symptomatic by definition and
claim injury from the same defective ventilation system over the
same general period of time." *Id.* at 627. Here, in contrast,
there are no similar allegations. Class membership does not
require a medical injury of any sort; no fact-intensive claims
about the adequacy of Harrah's facilities have been raised; and
class membership is not restricted by dates of employment: all
"former, current, and future nonsmoking employees" who "were, are
or in the future will be exposed" are candidates for inclusion.
R. Doc. 1 at 9-10. Further, now more than a decade old, *Mullen*
"appear[s] to represent a more hospitable view towards mass tort
class certification that is now in the past." In re *Katrina Canal
Breaches Consol. Litig.*, 258 F.R.D. 128, 138 (E.D. La. 2009),
*rev'd on other grounds*, 628 F.3d 185 (5th Cir. 2010). Since
*Steering Committee*, 461 F.3d 598 (5th Cir. 2006), and *Corley v.
Orangefield Indep. Sch. Dist.*, 152 Fed. Appx. 350 (5th Cir.
2005), the Fifth Circuit has "demanded a stricter application of
the predominance principles[.]" In re *Katrina*, 258 F.R.D at 138.

[11]    Though plaintiff's complaint omits reference to the
type of cancer, defendant alleges that Caesars's records indicate

shortness of breath, dizziness, wheezing or tightness in the chest, and headache.[12] These are not conditions the origins of which are easily ascertainable, nor does plaintiff allege as much. And unlike *Steering Committee*, the alleged injuries of putative class members stem not from a single accident, but from patterns of exposure over a period of time, rendering the causation inquiries even more particularized to each plaintiff. Each would bear the burden of proving that exposure to secondhand smoke during employment at Harrah's Casino was responsible for his or her injuries. The result would be an endless series of time-intensive factual inquiries about each plaintiff, including each's discrete medical history and risk factors; dates, times, and durations of exposure to secondhand smoke at Harrah's, home, and previous places of employment; and concentrations of exposure at Harrah's, home, and previous places of employment. These complicated questions of causation would certainly predominate at trial.[13]

_____

that Mr. Bevrotte died of Leukemia. R. Doc. 4-3 at 3 n.3.

[12]     R. Doc. 1 at 9.

[13]     This determination is in accord with the majority of federal courts that have addressed similar claims. *See, e.g., Badillo v. Am. Tobacco Co.*, 202 F.R.D. 261, 265 (D. Nev. 2001) (holding that a proposed class of Nevada casino workers exposed to secondhand smoke on the job failed to satisfy the predominance requirement, as individual issues of causation, comparative fault, assumption of risk, and damages predominated over common questions); *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 612-13 (W.D. Wash. 2001) (finding that a putative class of flight

Even if causation could be tried collectively, the unique damages claims of each plaintiff would make this case a poor candidate for class treatment. The Fifth Circuit has held that "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class." *Steering Comm.*, 461 F.3d at 602; *Corley,* 152 Fed. Appx. 350 at 355; *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) ("[W]here the plaintiffs' damage claims focus almost entirely on facts and issues specific to individuals rather than the class as a whole, the potential that the class action may degenerate in practice into multiple lawsuits separately tried renders class treatment inappropriate.").

In this case, damages claims are not subject to formulaic calculation. Indeed, the class definition is not limited to any particular type of injury or damages. Mere "exposure" is all that is required to become a member of the class.[14] Even among those who could allege medical injuries, the damages would vary widely from basic respiratory problems to, as with Ms. Bevrotte's son, serious illness and eventual death. *See Terrebonne v. Allstate*

---

attendants exposed to secondhand smoke on international flights was not maintainable since questions regarding each attendant's duration of employment, smoking history, family members who smoked, and medical background overwhelmed common questions).

[14]    R. Doc. 1 at 9-10.

*Ins. Co.*, 251 F.R.D. 208, 211 (E.D. La. 2007) (finding predominance of common questions lacking when the nature and extent of owners' property damage, resulting from the common cause of Hurricane Katrina, varied greatly in their particulars). There is no way for the Court to assess individual damages without experts, medical reports, and personal testimony from each plaintiff. Class certification would thus do little to spare judicial resources and much to threaten class cohesion. *Cf. Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (recognizing the deleterious "effect of monetary claims on class cohesiveness" and noting that classes seeking primarily monetary damages "will more likely consist of members with divergent interests").

**Superiority**

The 23(b)(3) predominance and superiority requirements are intertwined. *See Steering Comm.*, 461 F.3d 598 at 604 (noting the "interrelationship between predominance and superiority"); *Castano,* 84 F.3d at 745 n.19 (noting that the court's predominance finding "also implicates the court's superiority analysis"). Like the predominance inquiry, "the superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *Robertson v. Monsanto Co.*, 287

12

Fed. Appx. 354, 361 (5th Cir. 2008) (citing 7AA Wright, Miller, & Kane, *Federal Practice & Procedure* § 1783, at 322 (3d ed. 2005)). When the "issues of causation and damages are highly individualized," superiority is wanting. *Robertson*, 287 Fed. Appx. at 362; In re *FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *15 (E.D. La. 2008) ("[T]he predominance of the individual issues present ... detract from the superiority of the class action device[.]"). Here, whatever advantages might follow from class treatment on the duty issue would surely be overwhelmed by the confusion, time and expense resulting from the countless minitrials on breach, causation and damages. *See* In re *FEMA Trailer*, 2008 WL 5423488, at *15; *Castano*, 84 F.3d at 745 n.19 ("The greater the number of individual issues, the less likely superiority can be established.").

Further, this is not a case in which meritorious claims will go unasserted out of concern that litigation costs will wipe out the anticipated recovery. *Cf. Castano*, 84 F.3d at 748 (noting that negative value suits provide a compelling rationale for finding superiority in a class action); In re *Ford Motor Co.*, 182 F.R.D. at 225 (same). Plaintiffs like Ms. Bevrotte who allege serious injuries stand to recover substantial amounts. This provides ample incentive for them to proceed on an individual basis. *See* Ronald J. Rychlak, *Cards and Dice in Smoky Rooms:*

*Tobacco Bans and Modern Casinos*, 57 DRAKE L. REV. 467, 504–14 (2009) (discussing the strategies and successes of casino employees seeking compensation from their employers for injuries resulting from workplace exposure to secondhand smoke).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has failed to satisfy her burden under Rule 23(b)(3), as common issues do not predominate over individual ones, and a class action is not a superior method for adjudicating this matter. Therefore, the court need not address the threshold requirements of Rule 23(a). Defendant's motion to strike class allegations under Rule 23(d)(1)(D) is GRANTED. Its request in the alternative that the Court dismiss class allegations under Rule 12 is thus rendered moot.

New Orleans, Louisiana, this <u>4th</u> day of October, 2011.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE